IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| TOUCHCOM, INC., and <br> TOUCHCOM TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BERRESKIN & PARR <br> H. SAMUEL FROST, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   1:07cv0114 (JCC) <br> ) <br> ) <br> ) <br> ) |

# **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on a Motion to Dismiss filed by Defendants Bereskin & Parr and H. Samuel Frost (collectively "Defendants"). (Dkt. 72) Plaintiffs Touchcom, Inc. and Touchcom Technologies, Inc. (collectively "Touchcom" or "Plaintiffs") Second Amended Complaint alleges breach of contract and attorney negligence arising out of Defendants' representation of Plaintiffs regarding certain patent rights. For the following reasons, the Court will deny Defendants' Motion.

## I. **Background**

The facts and allegations in the Amended Complaint are set forth as follows. Plaintiffs are Canadian companies develop technology and licensing patent and technology rights in the

1

United States and elsewhere. (Plaintiffs' Second Amended Complaint ("Amend. Compl.") ¶ 2.) Defendant Bereskin & Parr is a Canadian intellectual property law firm at which Defendant H. Samuel Frost is a partner. (Amend. Compl. ¶ 3.) Jurisdiction is properly before this Court pursuant to 28 U.S.C. § 1338(a) and venue is properly laid in this District under 28 U.S.C. § 1391(b)(2), (b)(3).

In 1987, an inventor named Peter Hollidge ("Hollidge"), a principal of Plaintiff Touchcom Inc., retained Defendants to "obtain patent protection in a series of countries" for an interactive pump system technology (the "Invention"). This protection included, among other things, a United States patent. (Amend. ¶¶ 8-9.) Defendants prepared and filed a Canadian patent application for the Invention on August 6, 1987 and the Canadian patent issued on May 26, 1992. (Amend. Compl. ¶ 10.) This patent application "included, among other things, the complete computer source code for the Invention." (Amend. Compl. ¶ 10.) On December 7, 1987, Hollidge transferred all rights to the Invention to Touchcom, Inc., which later granted a license to Defendant Touchcom Technologies, Inc. for the right to use the invention. (Amend. Compl. ¶ 11.)

When pursuing patent rights in additional countries on behalf of Plaintiffs, Defendants elected to utilize the Patent Cooperation Treaty ("PCT") to obtain the remaining patents that

2

they had been retained to pursue for Touchcom. (Amend. Compl. ¶ 13.) The PCT provides for a unified procedure for filing a single patent application to protect an invention in all signatory countries. (Amend. Compl. ¶ 14.) Under the PCT process, the applicant makes a single PCT filing administered by the World Intellectual Property Organization and then "nationalizes" the PCT application in specific countries, typically undergoing a preliminary and local patent examination, country-specific grant procedures, and paying country-specific maintenance fees. (Amend. Compl. ¶¶ 13-15; Patent Cooperation Treaty, Jan 24, 1978, see 28 UST 7645.)

Defendants, acting on behalf of Plaintiff, filed the PCT international application in the British Patent Office on August 5, 1988. (Amend. Compl. ¶ 17.) The PCT application submitted by Defendants on behalf of Plaintiffs "did not include the complete computer source code for the Invention; rather, a portion of the computer source code that had been included with the Canadian patent application was omitted from the PCT international application."[1] (Amend. Compl. ¶ 18.)

On November 29, 1989 Hollidge executed a "Declaration to be Filed with U.S. Elected Office Under 35 USC § 371(c)(4),

---

[1] As is discussed in more detail below, this lack of source code ultimately lead a U.S. District Court to hold that the patent was "invalid [as a matter of law] due to indefiniteness." *Touchcom et al. v. Dresser, Inc.*, 427 F.Supp.2d 730 (E.D. TX 2005).

3

in which he declared himself to be the inventor of the Invention." (Amend. Compl. ¶ 19.) The Declaration "included a power of attorney appointing Frost, B&P, and various other B&P attorneys and agents as Touchcom's agents to 'prosecute this . . . application and transact all business in the Patent and Trademark Office connected therewith,'" and this Power of Attorney was never withdrawn. (Amend. Compl. ¶ 19.)

On December 29, 1989, Defendants and their agents filed a national phase application (U.S. Patent Application No. 449,970)("the '970 Application") for the Invention on Plaintiffs behalf. (Amend. Compl. ¶ 20.) When an applicant seeks to enter into the national phase in the United States, it must do so through its dealings with the United States Patent and Trademark office, located in the Eastern District in Virginia ("USPTO"). (Amend. Comp. ¶ 16.) The '970 Application was identical to the PCT application filed in the British Patent Office and thus contained the same omissions as that application. (Amend. Compl. ¶ 20.) Defendants and their agents subsequently corresponded with and appeared before the USPTO on matters relating to the '970 Application and did not correct the omission of the computer source code. (Amend. Compl. ¶ 21.) On June 25, 1991, the '970 Application issued as United States Patent No. 5,027,282 (the "'282 Patent"). (Amend. Compl. ¶ 23.) Defendants then advised Touchcom that the patent had been

obtained in the United States but did not disclose that the computer source code supporting the patent had not been submitted or that there was any reason to doubt the enforceability of the patent. (Amend. Compl. ¶ 24.) Touchcom relied on Defendants advice. (Amend. Compl. ¶ 24.)

Plaintiff alleges that Defendants continued to represent Touchcom's patent interests after the U.S. patent issued. Specifically, that on July 27, 1995, Defendants filed a Request for Certificate of correction with the USPTO to include additional drawings not submitted as part of the original patent application. (Amend. Compl. ¶ 25.) Defendants paid the maintenance fees on for the '282 Patent on Touchcom's behalf on June 26, 1995, August 10, 1999, and July 1, 2003.[2] (Amend. Compl. ¶ 25.) Additionally, Defendant B&P continues to be listed in the USPTO records as Touchcom's attorney/agent of record with respect to the '282 Patent. (Amend. Compl. ¶ 26.) Additionally, Defendant B&P has taken a number of actions on behalf of Touchcom regarding the original Canadian and international PCT patent. (Amend. Compl. ¶ 25.) In February, 2006 B&P "very strongly advised" Touchcom that they should comply with recent changes in Canadian patent law. (Amend. Compl. ¶ 25.) Most recently, in May 2006, B&P made maintenance

---

[2] In order to maintain an interest in a patent a semi-annual maintenance fee must be paid to the relevant patent office, here the USPTO. 37 C.F.R § 1.20 *et seq.*

5

fee payments on Touchcom's behalf for the Canadian patent. (Amend. Compl. ¶ 25.)

Touchcom has twice brought actions to enforce the '282 patent. (Amend. Compl. ¶ 27.) The first action was settled for a confidential sum  In the second action (*Touchcom et al. v. Dresser, Inc.*) decided on December 5, 2005, the District Court of the Eastern District of Texas found that the patent was "invalid [as a matter of law] due to indefiniteness." (Amend. Compl. ¶ 28; *Touchcom*, 427 F.Supp.2d 730.) Touchcom voluntarily withdrew its appeal of this decision. *Touchcom v. Dresser, Inc.*, 182 Fed.Appx. 994 (Fed. Cir. 2006.)

On October 4, 2006, Plaintiffs filed suit against Defendants in the Circuit for Arlington County Virginia and Defendants removed the action on January 20, 2007. (Dkt. 1.) Since that time, the case has been dismissed, appealed, remanded, and, on November 13, 2009, amended. (See Dkt. 51-71.) On December 7, 2009, Defendants moved to dismiss Plaintiffs' Second Amended Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). (Dkt. 72.) Plaintiffs opposed on December 18, 2009 (Dkt. 75) and Defendants replied on December 23, 2009. (Dkt. 77). This Court heard oral argument on the motion on January 29, 2010. This motion is now before the Court.

## II. Standard of Review

A Rule 12(b)(6) Motion to Dismiss tests the legal sufficiency of a complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted). In deciding a Motion to Dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citation omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.*

Recently, the Supreme Court has stated that "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted to be true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A claim has factual plausibility when "the plaintiff pleads factual content that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Twombly*, 550 US at 570). "A formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 557. (citation omitted).

Here, Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6), relying on the affirmative defense that the Plaintiffs' claims are time barred. Ordinarily, affirmative defenses based on the statute of limitations must be raised by the defendant under Federal Rule of Civil Procedure

7

8(c), *see* Fed.R.Civ.P. 8(c), and the burden of establishing the affirmative defense rests on the defendant. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *See Newell v. Richards,* 323 Md. 717, 594 A.2d 1152, 1156 (1991); *accord Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.,* 427 F.2d 862, 870 (4th Cir.1970). A motion to dismiss filed under Federal Rule of Procedure 12(b)(6) testing the sufficiency of the complaint, "generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim[s] [are] time-barred." *Goodman,* 494 F.3d at 464. Where facts sufficient to rule on an affirmative defense are alleged in the complaint, however, "the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Id.* "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Id.* citing *Richmond, Fredericksburg & Potomac R.R. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993); *accord Desser v. Woods,* 266 Md. 696, 296 A.2d 586, 591 (1972). Thus, in ruling on Defendants' Motion, this Court, liberally construing the Complaint in favor of the Plaintiffs, must find all of the facts necessary to establish Defendants' affirmative defense on the face of the Second Amended Complaint.

### III. <u>Analysis</u>

Plaintiffs' Second Amended Complaint states two causes of action: (1) Negligence; and, (2) Breach of Contract. Defendants' Motion to Dismiss is based on their affirmative defense that the Plaintiffs' claims are time barred by Virginia's Statute of Limitations law. It is not disputed by the parties that the same three-year statute of limitations applies to both claims. (Defendants' Memorandum in Support of its Motion to Dismiss ("Defs.' Mem.") at 4-5; Plaintiffs' Opposition to Defendants Motion to Dismiss ("Pls.' Opp.") at 6-7.) In Virginia, "an action in negligence of an attorney in the performance of professional services, while sounding in tort, is an action for breach of contract and thus governed by the statute of limitations applicable to contracts." *Oleyar v. Kerr*, 225 S.E.2d 398, 400 (Va. 1976); Defs.' Mem. at 4, Pls.' Opp. at 7. Defendants argue, and Plaintiffs do not dispute, that under Va. Code § 8.01-246 a three-year statute of limitations applies. The Defendants state that this is because the "contract" between the parties was an oral contract. (Defs.' Mem. at 5; Pls.' Opp. at 7.) At this time, the Court does not know the details of the oral agreement. At issue, is precisely when Defendants' representation of Plaintiffs ended, thus starting the running of the statute of limitations under the continuous representation doctrine.[3] An affirmative defense

---

[3] The parties also dispute which version of Va. Code § 8.01-246 applies: the

9

may be reached by a Rule 12(b)(6) motion to dismiss only if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'"  Such is not the case here, and so this Court will deny Defendants' Motion.

   A.   **Continuous Representation Doctrine**

In legal negligence or malpractice cases, the Virginia "continuous representation" doctrine provides:

> When malpractice is claimed to have occurred during the representation of a client by an attorney with respect to a particular undertaking or transaction, the breach of contract or duty occurs and the statute of limitations begins to run when the attorney's services rendered in connection with that particular undertaking or transaction have terminated.

*Keller v. Denny*, 352 S.E.2d at 330 (emphasis added); see also Guthrie v. Flanagan, No. 3:07cv479, 2007 WL 4355320, at *2 (E.D. Va. Dec. 11, 2007) ("[W]here there is a continuous or recurring course of professional services related to a particular undertaking, the breach occurs when the attorney's services with respect to the particular undertaking or transaction have terminated."). In *Keller,* the court held that the continuous representation doctrine "is applicable only when a continuous or recurring course of professional services relating to a particular undertaking is shown to have taken place over a period of time." *Keller,* 219 Va. at 980, citing *Farley v.*

---

1977 version, applicable in 1991; or the 1996 version applicable in 2005.  As this Court finds, based on other grounds, that dismissal is not appropriate at this time and will not address this dispute here.

*Goode,* 252 S.E.2d 594, 601(establishing the "continuous treatment" rule in medical malpractice when the diagnosis and treatment for the same or related illnesses or injuries, continuing after the alleged acts of malpractice the statue of limitations was tolled.)  In that case, the Virginia Supreme Court also found, however, that when the alleged malpractice consists of a single, isolated act, Code § 8.01-230 dictates that the statute of limitations begins to run when that act is performed, "regardless of the time of its discovery." *Keller*, 232 Va. at 518-519 (1987).  The proper inquiry for this Court is "not whether a general attorney-client relationship has ended, but instead, when the attorney's work on the *particular undertaking* at issue has ceased."  *Shipman*, 593 S.E.2d at 324 (emphasis supplied).

Plaintiffs argue that the "'undertaking' included protecting Touchcom's Invention both inside and outside of Canada through a series of patents, including but not limited to a U.S. patent."  (Pls.' Opp. at 16; Amend. Compl. ¶¶9, 33.) Defendants argue that the "undertaking" was no more than the securing of the U.S. patent, which was completed on June 25, 1991.  The parties offer competing case law in support of their claims.

Defendants argue that the Virginia Supreme Court case of *Comptroller of Virginia* ex rel *Virginia Military Institute v.*

11

*King*, 217 Va. 751 (1977) is "directly on point." (Defs.' Mem. at 11.) In *V.M.I.* the Plaintiff brought suit against an architectural firm for damages to a building. The "cause of action" in that case accrued against the architects for improper design when the plans for the building were approved. *V.M.I.*, 217 Va. at 759. The court rejected a continuous representation argument made by the plaintiff, finding that the design of the building was one particular undertaking and that the "supervision of construction" amounted to a separate undertaking. *Id.* at 761.[4] In so doing, the court took into account the terms of the agreement between the parties and found that, at the time the cause of action accrued (when the designs were approved), the defendants "had a right to demand and receive payment for their services for that phase of their undertaking" and that "if defects had been discovered, V.M.I. could have initiated legal proceedings against architects." *Id.* at 759.

The *V.M.I.* case is distinguishable in several ways. First, *V.M.I.* was decided by the trial court, not on a motion to dismiss, but after a review of the facts in a full bench trial. (Pls.' Opp. at 18; *V.M.I.*, 217 Va. at 762.) Second, in *V.M.I.* the court examined a written agreement between the parties that

---

[4] Ultimately, the court determined that the defendants breached their duty in their "supervisory" capacity and thus the Plaintiff's complaint was timely. *Id.* at 761.

delineated the various tasks, duties and responsibilities that were required of defendants under the contract. *V.M.I.*, 217 Va. at 762. In the instant case, an affirmative defense is being asserted in a Rule 12(b)(6) Motion to Dismiss, where the court is limited to the facts as alleged in the complaint rather than after complete discovery. Furthermore, there is not a written agreement regarding the scope of Defendants' patent representation of Plaintiffs with regard to the Invention.

Plaintiffs offer the alternative Virginia Supreme Court case of *McCormick v. Romans and Gunn*, 198 S.W.2d 651 (Va. 1973). In *McCormick*, the plaintiff sued her attorneys to recover funds from an account established with their firm to manage the sale of certain real property. The court found that the agreement between the parties "required a continuation of services by the partnership" and the statute of limitations began to run only "upon termination" of that agreement. *Id.* at 655. Similarly, in *Star Broadcasting, Inc. v. Reed Smith LLP* the Eastern District of Virginia court held that the continuous representation rule applied when a plaintiff sued his attorney for legal malpractice arising out of the negotiating and drafting of a licensing agreement. *Star Broadcasting, Inc.*, Case No. 08-cv-0616, 2009 WL 482833, at *7 (E.D. Va. 2009). In that case at the summary judgment stage, the court found that, despite the fact that the agreement was executed in 1999,

13

representation was continuous because Defendant was "was then called on to give attention to the matter until at least April 11, 2006 when [Defendant] ceased providing advice to Star on the [licensing agreement] matter. *Id.*

The Court will dismiss a case based on an affirmative defense at the Rule 12(b)(6) stage only "if all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Goodman,* 494 F.3d at 464; See also *Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 699 (S.D.N.Y. 2002) (quoting Corless v. Mazza, 744 N.Y.S.2d 249, 251 (N.Y. App. Div. 3d. Dep't 2002))(holding that if "there is a question of fact regarding the application of the continuous representation doctrine ... defendant's motion to dismiss based on the statute of limitations must be denied"). On the facts as plead in this case, there is an oral agreement between the parties that initially defines the "scope of the undertaking." Indeed, in addition to the original oral agreement, the 1989 Declaration given by Hollidge "included a power of attorney appointing Frost, B&P, and various other B&P attorneys and agents as Touchcom's agents to 'prosecute this … application and transact all business in the Patent and Trademark Office connected therewith,'" and this Power of Attorney was never withdrawn. (Amend. Compl. ¶ 19.) Accepting the factual allegations in the Second Amended Complaint as true, and viewing the Complaint in

14

the light most favorable to the Plaintiff, it is not clearly established that the "particular undertaking" at issue was limited to the issuance of the '282 patent.  Rather, on the facts as plead, the Defendants were called on to give attention to the Invention and its various patents, including the '282 patent, well after the '282 patent had issued.  (Amend. Compl. ¶¶ 25-26).  At this stage of litigation the Court will not dismiss a complaint based on the affirmative defense of the statute of limitations where all the facts necessary to do so do not "clearly appear" on its face.

### III. Conclusion

For these reasons, the Court will deny Defendants' Motion to Dismiss.  An appropriate Order will issue.

|  |  |
|---|---|
| | /s/ |
| February 12, 2010 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |