IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

TOUCHCOM, INC., *et al.*,      )
                               )
     Plaintiffs,               )
                               )
          v.                   )
                               )    1:07cv114 (JCC)
BERESKIN & PARR, *et al.*,     )
                               )
     Defendants.               )

**M E M O R A N D U M   O P I N I O N**

This matter comes before the Court on Plaintiff's
Motion for Reconsideration.  [Dkt. 224.]  For the reasons stated
below, the Court will grant in part and deny in part this
motion.

**I.   Background**

To summarize the background relevant to this motion,
in 1987, plaintiff Touchcom, Inc. ("TI") hired defendants
Bereskin & Parr ("B&P") and H. Samuel Frost (a partner at B&P)
(collectively "Defendants") to obtain patent protection for an
invention related to gasoline pumps (the "Invention").  After
obtaining a Canadian Patent, Defendants filed an application
under the Patent Cooperation Treaty ("PCT"), resulting in the
issuance of United States Patent No. 5,027,282 (the "'282
Patent") in 1991.

Plaintiff Touchcom Technologies, Inc. ("TTI") was incorporated on June 13, 1989.  In 2003, TI and TTI (collectively "Plaintiffs") sued Dresser, Inc., in the Eastern District of Texas for infringement of the '282 Patent (the "Dresser Litigation").  The court in that action granted summary judgment, finding the '282 Patent was invalid because certain software code was missing from the specification.  *Touchcom, Inc. v. Dresser, Inc.*, 427 F. Supp. 2d 730, 736–37 (E.D. Tex. 2005).  Plaintiffs are suing Defendants for malpractice arising out of that action.

After extensive briefing, evidentiary fact-finding, and oral argument, this Court granted-in-part and denied-in-part Defendants' Motion for Summary Judgment [Dkt. 150] on May 18, 2011, [Dkts. 220, 221].  The part this Court granted related to whether TI had granted its rights to collect proceeds from the Dresser litigation to TTI, meaning that TI lacked standing to prosecute this case.  Plaintiffs' seek reconsideration of that decision.

Plaintiffs filed their Motion for Reconsideration, [Dkt. 224] on June 10, 2011, along with a memorandum of law in support, [Dkt. 225 ("Mot.")].  Defendants filed a response in opposition on June 22, 2011, [Dkt. 227], and Plaintiffs filed a reply brief on June 27, 2011, [Dkt. 228].

Plaintiffs' Motion is before the Court.

2

## II.   Standard of Review

Under Rule 54(b), any order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision at any time before the entry of judgment."  Thus, "a district court retains the power to reconsider and modify its interlocutory judgments." *American Canoe Ass'n v. Murphy Farms*, 326 F.3d 505, 514-15 (4th Cir. 2003); *see also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991).

The district court's reconsideration of an interlocutory order is not subject to the heightened standards that apply to reconsideration of declaratory judgments. *American Canoe*, 326 F.3d at 514.  Instead, the Court may exercise its discretion to afford relief from his interlocutory orders "as justice requires." *Fayetteville Investors*, 936 F.2d at 1473.  The discovery of substantially different evidence, a subsequent change in the controlling applicable law, or the clearly erroneous nature of an earlier ruling would all justify reconsideration.  *See American Canoe*, 326 F.3d at 515 (quoting *Sejman v. Warner-Lambert Co., Inc.*, 845 F.2d 66, 69 (4th Cir. 1988)).

## III. Analysis

Plaintiffs raise two objections to the Court's partial grant of summary judgment.  First, Plaintiffs claim that this

Court overlooked certain evidence that would have made clear TI's standing in this case.  Second, Plaintiffs claim that this Court unnecessarily made a finding as to the existence of an attorney-client relationship between TI and B&P.  The Court considers each claim in turn.

### A. TI's Standing to Sue B&P

Defendants argue that TI assigned to TTI its rights to recover for violations of the '282 Patent in a 2003 amendment to the companies' license agreement (the "2003 Amendment"), meaning that TI had no right to recover damages in the Dresser Litigation, and, therefore, no standing to sue Defendants for malpractice.  This Court agreed on first review, mainly because of the following deposition testimony of Peter Hollidge, the inventor of the '282 Patent:

> Q: All proceeds regarding such litigation . . . shall be the sole and exclusive property of the licensee," which is Touchcom Technologies.  Does that also accurately reflect the action that was taken by TI and TTI's boards' of directors?
>
> A: That is correct.

Plaintiffs argue that this Court's finding was erroneous in light of other statements at Mr. Hollidge's deposition, a later-submitted errata sheet, a sworn declaration by Mr. Hollidge, and statements of Samuel Wakim, an attorney who was the Rule 30(b)(6) designee for both TI and TTI on the

relevant issues.  (Mot. at 10.)  Having reviewed those additional materials, the Court maintains its original ruling.

The question at issue here is whether the TI and TTI boards of directors granted TTI the sole and exclusive right to collect proceeds from litigation enforcing patent rights.  All agree that, if such a grant occurred, it would have happened in the alleged 2003 Amendment.  It is therefore obviously relevant whether that Amendment was actually signed and ratified.  On that former point, there is a factual dispute.  Both Mr. Hollidge and Mr. Wakim made clear at their depositions that neither is aware of Amendment having been actually signed. (Hollidge Dep. 64:10-13; Wakim Dep. 180:22-24.)  Thus, if this were solely a question of whether the Amendment was signed, the Court would not grant summary judgment.

But though the evidence may not be adequate to resolve whether the Amendment was *signed*, it may still be adequate to show whether its terms were *effected*.  On that score, the evidence remains clear to this Court.  The gist of Plaintiff's argument is that, because Mr. Hollidge, who is legally blind, consistently qualified his statements regarding terms of the 2003 Amendment with the caveat that his knowledge was subject to his review of the Amendment itself, it remains disputed whether those terms were actually effected.  In fact, however, Mr. Hollidge was not entirely consistent in this regard.

Starting with the errata sheet, Plaintiffs did not mention during briefing on summary judgment that an entry on Mr. Hollidge's errata sheet addresses his "[t]hat is correct" statement.  In Footnote 29 of their Brief in Opposition to Summary Judgment, Plaintiffs cited to the errata sheet to contest a different statement.

The statement at issue was:

Q: Is it correct that if either of the Touchcoms had been entitled to recover damages for patent infringement, the money would have gone to Touchcom Technologies and not to Touchcom, Inc.?

. . . .

A: *Yeah, to the best of my knowledge, that would have been the route.*

(Hollidge Dep. 43:21-44:7 (emphasis added).)  Mr. Hollidge's errata sheet changed the line "Yeah, to the best of my knowledge, that would have been the route," to "[y]eah, to the best of my knowledge, that would have been the route, subject to reviewing the legal agreements." (MSJ Opp. Ex. 6.)  The Court originally discounted this statement because of the errata sheet, though now being invited to take a closer look, the statement strikes the Court as worthy of mention because it is immediately followed by the following additional text, which is not addressed in the errata sheet:

Q: Okay.  All right.  And that's -- that's because of the relationship and the

> agreement you've described between
> Touchcom, Inc. and Touchcom Technologies,
> right sir?
>
> A: Yes.

(Hollidge Dep. 44:9-13.)  Perhaps it was a mere oversight not to

tack on "subject to reviewing the legal agreements" to this

answer too, but this additional exchange seems to take as a

given that TI and TTI had an agreement and relationship wherein

TTI would receive proceeds from litigation.

A similar thing happened regarding the statement this

Court relied on in summary judgment:

> Q: And it goes on to provide, at the top of
> the next page in Paragraph A, "All proceeds
> regarding such litigation . . . shall be
> the sole and exclusive property of the
> licensee," which is Touchcom Technologies.
> Does that *also* accurately reflect the
> action that was taken by TI and TTI's
> boards' of directors?
>
> A: That is correct.

(Hollidge Dep. 67:23-68:7.)  Mr. Hollidge's errata sheet again

added, after "[t]hat is correct," "subject to reviewing the

legal agreements and documents."  (MSJ Opp. Ex. 6.)  Again,

however, nearby text did not receive the same corrective

treatment.  The immediately preceding text reads:

> Q: Does the paragraph I read to you . . .
> accurately reflect the action that was
> taken by the boards of directors of
> Touchcom, Inc. and Touchcom Technologies?
>
> . . . .

> A: . . . .  What the paragraph says is that
> Touchcom Technologies is authorized -- is
> authorizing the pursuit of Wayne/Gilbarco
> and others for patent infringement.  I
> think that's what the paragraph says; is
> that correct?
>
> Q: Right.
>
> A: Okay.  *We engaged Wildman Harrold to
> pursue Dresser and Gilbarco, so we would
> have agreed to do that.*

(Hollidge Dep. 67:5-21 (emphasis added).)  This uncorrected text

shows Mr. Hollidge first confirming what the Amendment said,

then stating that, based on what actually happened in the real

world, pursuing alleged patent infringers would have been agreed

to in the Amendment.

> The transcript continues:
>
> Q: And it goes on to provide, at the top of
> the next page in Paragraph A, "All proceeds
> regarding such litigation . . . shall be
> the sole and exclusive property of the
> licensee," which is Touchcom Technologies.
> Does that *also* accurately reflect the
> action that was taken by TI and TTI's
> boards' of directors?
>
> A: That is correct.

(Hollidge Dep. 67:22-68:7 (emphasis added).)  Reading this

statement along with the former, which, again, was not addressed

in the errata sheet, it is clear that Mr. Hollidge based his

answers upon what actually happened in the world, whether or not

he knew what the Agreement said or whether anyone signed it.

Mr. Hollidge's errata entries and declaration statement moreover strike this Court as a bit too convenient. "[T]he purpose of an errata sheet is to *correct alleged inaccuracies* in what the deponent *said* at his deposition, not to modify what the deponent said for tactical reasons or to reflect what he wishes that he had said." *Crowe v. Marchand*, No.05-98T, 2006 WL 5230014, *1 (D.R.I. 2006) (emphasis in original). Rule 30(e) (allowing the submission of errata sheets), "cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination." *Burns v. Bd. of County Com'rs of Jackson Cnty.*, 330 F.3d 1275, 1282 (10th Cir. 2003) (citations omitted). The addition of language like "subject to reviewing the legal agreements and documents" is not a correction of an inaccuracy, it is a tactical adjustment.

If Mr. Hollidge's answers actually depended on his review of the actual documents, one might expect his responses to the above questions to have looked like "I can't remember," or "I don't know." Instead Mr. Hollidge answered the questions substantively and attempted to qualify some (but not all) of his answers later. And it is clear from his answers that, while Mr. Hollidge may not have known whether the 2003 Amendment was ever

actually signed, he knew that certain things happened, including the assignment of litigation proceeds.  He knew, in other words, that the Amendment was effected.

### B. Existence of an Attorney/Client Relationship

At the conclusion of this Court's Memorandum Opinion on Summary Judgment, this Court stated that "no attorney/client relationship existed between Plaintiff Touchcom, Inc. and Defendant Bereskin & Parr, meaning that Touchcom, Inc., is without standing to proceed in this matter."  [Dkt. 220 at 56.] Plaintiffs' argue that the Court did not need to address the existence of an attorney-client relationship, and Defendants do not appear to dispute this point.  This Court will therefore modify its earlier statement as follows: Plaintiff Touchcom, Inc. assigned its rights to proceeds from litigation against Dresser to Touchcom Technologies, Inc., meaning that Touchcom, Inc. is without standing to proceed in this matter.

### IV.  Conclusion

For these reasons, the Court will grant in part and deny in part Plaintiff's motion.  An appropriate order will follow.


July 7, 2011                    _____/s/_____
Alexandria, Virginia                  James C. Cacheris
                           UNITED STATES DISTRICT COURT JUDGE